OPINION
Thomas D. Glass appeals from the final judgment of the Greene County Court of Common Pleas, asserting as error the denial of his motion to suppress and his motion to bifurcate.
The record reveals as follows. Glass was indicted on January 6, 2000 for four counts of robbery in violation of R.C. 2911.02(A)(3) and one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with a firearm specification. In March 2000, Glass filed a motion to suppress the identification testimony given by a victim of one of the robberies. In May 2000, Glass filed a "motion to bifurcate" (hereinafter referred to as "motion to sever") the five counts in the indictment. Following a suppression hearing, the trial court denied Glass's motions to suppress the identification testimony and to sever the five counts. On August 15, 2000, the state entered a nolle prosequi of the gun specification in the count of aggravated robbery. On that same day, Glass entered a plea of no contest to each count and was found guilty. He was sentenced to three years of incarceration for each of the counts of robbery and five years of incarceration for the count of aggravated robbery. The sentences were ordered to be served concurrently.
Glass now appeals the trial court's denial of his motion to suppress the identification testimony and his motion to sever. He raises two assignments of error.
 I. A PHOTOGRAPHIC IDENTIFICATION THAT IS UNRELIABLE MUST BE SUPPRESSED[.]
Glass argues that because the factors surrounding the photo display were unreliable, the photographic identification should have been suppressed by the trial court.
When the manner or mode of the presentation of a photo display to a victim suggests that one individual in the display is more likely than the other individuals depicted to be the perpetrator of the crime, that suggestion increases the likelihood of misidentification and may violate the defendant's right to due process. State v. Mann (Apr. 28, 1992), Montgomery App. No. 12685, unreported, citing Neil v. Biggers (1972),409 U.S. 188, 93 S.Ct. 375. "Identification testimony that has been tainted by an unduly or unnecessarily suggestive out-of-court confrontation may be suppressed on that basis." Id. Even if the confrontation was unnecessarily or unduly suggestive, however, there was no violation of due process if the victim's identification possessed sufficient aspects of reliability. Id. A determination of the reliability of the identification is not necessary, however, unless the identification was the product of an unnecessarily or unduly suggestive confrontation. Id. The record reveals no evidence that suggested that Glass was more likely to be the perpetrator of the crime than were the other individuals in the photo display. The police officer who created the display and showed it to the victim testified at the suppression hearing. He stated that he had created the display by taking Glass's photograph and looking through a "book of mug shots" for pictures of individuals that had looked similar to Glass. He stated that in showing the display to the victim, he had not told the victim to look at any one of the pictures. He also testified that he had read the back of the display to the victim before asking the victim to look at it. The back of the display stated as follows:
 You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgement. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss this case with other witnesses nor indicate in any way that you have identified someone.
The victim testified that the officer had not suggested, by "gestures or anything at all," that he should pick Glass. The victim also stated that the officer had read the back of the display to him.
We have reviewed the photo display. It contains six color photographs of black males who appear to be in the same age group. The photographs show, for the most part, only the individuals' heads and they all have similar haircuts and mustaches. There is nothing outstanding about Glass's photograph, as all of the individuals are depicted similarly.
Because nothing about the identification confrontation or the photo display itself was unnecessarily or unduly suggestive, we need not analyze the reliability of the victim's identification of Glass. The trial court did not err in denying his motion to suppress.
The first assignment of error is overruled.
 I. THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SEVER[.]
Glass argues that the trial court erred in denying his motion to sever the counts. He asserts that the alleged offenses were not the same or similar crimes, but instead involved different crimes that occurred on different dates at separate locations.[OpngBr.p. 6] He claims that because the offenses were not similar, the state should not have been permitted to charge them in the same indictment pursuant to Crim.R. 8(A). He further argues that because joinder was inappropriate under Crim.R. 8(A), he should not have had the Crim.R. 14 burden of demonstrating that he was prejudiced by the joinder.
Crim.R. 8(A) permits two or more offenses to be charged in the same indictment if the offenses are of the same or similar character. It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries. State v. Schiebel (1990), 55 Ohio St.3d 71, 86-87,564 N.E.2d 54, 71; State v. Torres (1981), 66 Ohio St.2d 340, 343,421 N.E.2d 1288, 1290; State v. Thomas (1980), 61 Ohio St.2d 223, 225,400 N.E.2d 401, 404.
After Glass changed his plea to no contest, the state read the following facts on the record:
 As to Count 1, which occurred on August 15th, 1999, it occurred at the BP Station located on West Third Street, City of Xenia, Greene County, Ohio. On that date the Defendant went to the BP Station and demanded money and * * * stated to the attendant that the attendant give him all of the money. The Defendant indicated he didn't want to shoot or hurt the attendant. In response to that the money was turned over to the Defendant.
 Count 2 has to do with a theft that occurred at the Dairy Mart Store on West Second Street, Xenia, Greene County, Ohio on September 22. The Defendant * * * went to that establishment, again, demanded money, stated to the attendant then and there: Give me all the money or I'll shoot you. And in response to that threat of force the attendant did turn over a sum of money to the Defendant. And he fled the establishment.
 Count 3 has to do with a theft that occurred at Moto Mart Store on West Second Street on December 12th of 1999. Again the Defendant approached an employee of that establishment, made a demand for money. Stated: Give me all of your money or I'll shoot you. In response to that threat, the attendant did provide a sum of money from the store's receipts to the Defendant. And he did flee the establishment.
 Count 4 has to do with a theft that occurred on December 23, 1999. This theft, by force occurred at Choppy's Tobacco Shop located on South Detroit, Greene County, Ohio. On that date the Defendant did go to the establishment, again demanded money of the attendant, the content of that was with threat of force. In response to the Defendant's threat the money was provided to the Defendant. And he did take that money and again fled the establishment.
 The final count of the indictment has to do with a theft that occurred at the Speedway Store, West Detroit Street, Xenia, Greene County, Ohio on December 28th of 1999. On that date the Defendant went into that establishment and approached an attendant, showed a gun and demanded that the attendant turn over money. In response to the implied threat, the victim did turn over store receipts. And the Defendant did flee the establishment. [Tr.2p.7-9]
The information about the five counts which is of record consists of the indictment, the above quoted statement made in connection with Glass's no contest pleas, and the discovery packet furnished by the state to defense counsel. Based upon this limited amount of information, it appears to us that Glass's crimes were of the same or similar character. Each of the crimes involved a robbery of a convenience-type store. In all five crimes, Glass demanded money and threatened the use of force in so doing. On three occasions, he threatened to shoot the victim if money was not turned over. On another occasion, he said that he did not want to shoot the victim. On the last occasion, he brandished a gun. Further, on at least three occasions, his demands for money were similar, i.e., "give me all your money." Thus, pursuant to Crim.R. 8(A), the state was permitted to allege his crimes in the same indictment.
If similar offenses are properly joined pursuant to Crim.R. 8(A), a defendant can move to sever the charges pursuant to Crim.R. 14. Crim.R. 14 states, "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * *." To affirmatively show that his rights have been prejudiced, the defendant "must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." State v. Lott (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293,298, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591; Torres, at syllabus.
In Glass's motion to sever, Glass argued that the alleged acts were "serious and would make it difficult [for him] to receive a fair trial[.]" He also stated that joinder of the offenses would pose a great risk to him because "the jury could conclude [that] with so many robbery charges that he must be guilty."
We do not believe that these general assertions provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the right to a fair trial. Further, Glass's appellate brief fails to affirmatively demonstrate how the trial court abused its discretion in refusing to separate the charges for trial. In Lott, supra, the court stated that "when simple and direct evidence [of each crime joined at trial] exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as `other acts' under Evid.R. 404(B)." Lott,51 Ohio St.3d at 163, 555 N.E.2d at 298. From this record, we can only conclude that there was simple and direct evidence of each of the five counts. Thus, Glass's argument is not persuasive.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
 _____________ WOLFF, P. J.
GRADY, J. and YOUNG, J., concur.